Exhibit 1 to Notice of Filing of First Amended Complaint

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: ~~————————~~1:21-cv-01747-KLM

RTP ROOFING CO.,

     Plaintiff,

v.

TRAVELERS COMPANIES, INC.,

     Defendant.

---

### FIRST AMENDED COMPLAINT AND JURY DEMAND

---

     Plaintiff RTP Roofing Co. ("RTP" or "Plaintiff"), through its attorneys, Daly & Black,

P.C~~.,~~. and Gray LLC, respectfully submits the following First Amended Complaint and Jury

Demand:

### INTRODUCTION

     ~~1.      The Travelers Companies, Inc. ("Travelers" or "Defendant") insures thousands of~~

~~homes and commercial buildings in~~ Colorado~~.~~

     ~~2.      Travelers has consistently and wrongly denied full payment when processing each~~

~~and every insurance claim for hail loss on these properties.~~

     ~~3.~~1.      As is part of "hail alley,~~,"~~." Only Texas surpasses Colorado ~~ranks second only to~~

~~Texas for~~ in the total number of ~~hail loss~~insurance claims ~~filed with insurers. Property owners in~~

~~Colorado pay higher premiums than in other states for their insurance policies~~for hail damage.

Between 2017 and 2019, more than 380,000 Colorado residents – an average of 126,000 per year – filed such claims.

2.      When hail or damaging stormsAs a result of the frequency of hail storms, Colorado property owners pay higher insurance policy premiums than homeowners in other states.

4.      When damaging hail and windstorms strike, roofing contractors are engaged by insureds (the homeowners, commercial building owners, and HOAs) to complete roofing work forto address the hail and wind damage.

5.3.      In most casesinstances, roofing contractors work directly with the property owner's insurer, like Travelers, to determine the scope of work that is covered by the property owner's policy, and the amount the insurance company must pay the contractor for the roofing work to be performedonce a homeowner makes a claim related to roof damage.

6.      When processing claims for hail damage, Travelers purposefully denies payments for benefits that are covered under the building owners' policies.

7.      In particular, Travelers consistently and without exception denies payment for labor for removing roofing material.

8.      The roofing contractors suffer the economic damage, since the building owners are only asked to contribute their deductible towards the cost of roofing work.

9.      As part of the roofing work following a damaging storm, experienced and skilled roofing contractors must remove and replace damaged roofing materials.

10.      Roofing contractors hire crews of employ skilled workers who navigate dangerous work areas of 30 or more feet off the ground. Roofers suffer injuries and die at

significantly higher rates than other construction workers because of the inherent risk of this work.

11.    Roofers also must learn and apply precise and careful skills specific to working with roofing material, particularly at dangerous heights.

12.4.   They are specialized laborers retained specifically for roofing work. They carefully traverse a roof 30-plus feet off the ground, using cables and harnesses, avoiding damaging the unaffected portions of the roof, and knowing howare trained to work with a variety of roofing materials as part of a delicate and precise process.  in a dangerous environment. Roofers must navigate dangerous work areas that are 30 or more feet off the ground and sometimes very steep. They frequently use harnesses and cables in order to traverse the roof they are working on. Roofers suffer catastrophic injuries at a significantly higher rate than other workers. According to the Bureau of Labor Statistics, roofers had a work fatality rate more than 10 times the average rate of work fatalities per year in 2018.

13.    Contractors In light of the technical nature of roofing work and the dangers inherent in the trade, contractors pay roofers the same higher wage, compared to typical construction or demolition work, regardless of whether they are removing roofing material or installing it, since removal requires the exact same skill as installing it.

14.5.   wages than some other trades. Contractors must also pay higher workers' compensation premiums for roofing labor than for other types of construction work.

6.      However, Travelers does not pay Naturally, part of the re-roofing process involves the tear-off of existing roofing materials. Because it requires the same skill and care as installing roofing materials, tear-off is performed by roofers as opposed to laborers or another,

less skilled trade. Roofing contractors ~~for skilled~~ pay roofers the same wage regardless of whether the roofers are installing roofing material or tearing it off.

7.      The Travelers Home and Marine Insurance Company, The Standard Fire Insurance Company, and Travelers Commercial Insurance Company (collectively, "Travelers" or "Defendants") insure thousands of homes in Colorado. In 2020, Travelers entities held a 6.89% market share in the homeowner's insurance sector in Colorado.

~~15.~~8.      In adjusting its Colorado insureds' claims, Travelers refuses to pay the roofing labor ~~when the labor is designated as removal by its estimating software, called Xactimate.~~ rate for tear-off of roofing material. Instead, Travelers pays a ~~significantly lower~~"demolition rate." This is the labor rate that ~~is applicable to general demolition, like carrying trash to the garbage after a wall is knocked down~~would be appropriate for taking a sledgehammer to a fire-damaged structure or removing kitchen countertops. It is not appropriate, nor does it represent the market rate, for the tedious, dangerous process of removing roofing materials that is performed by the very same skilled laborers who install new ones.

~~16.      Notably, Travelers pays a higher roofing labor rate for roofing material installation.~~

~~17.      The same workers, requiring the same skills and faced with the same risk, perform both installation and removal of roofing material. The roofing contractors pay the workers the same higher wages (and pay for the same increased workers compensation benefits) for both installation and removal.~~

~~18.~~9.   There is no reasonable basis for denying ~~roofing contractors~~ payment ~~for~~of the roofing labor ~~to remove~~rate for tear-off of roofing material.

19.10.  ThisTravelers' unreasonable denial is actionable under Colorado's bad faith law.

## COLORADO BAD FAITH LAW

20.    Under Colorado law, C.R.S.Revised Statutes §§ 10-3-1115 and -1116, allow a plaintiff in a first-party insurance case claiming that the "first-party claimant" to recover reasonable attorneys' fees, court costs, and two times actual damages when an insurance company unreasonably delayeddenies or denieddelays payment of insurance benefits can recover double damages, costs and attorney fees.

21.11.  Specifically, the bad faith statute provides that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for. Section 10-3-1115(1)(b)(I) defines a first-party claimant as someone "asserting an entitlement to benefits owed directly to or on behalf of any first-party claimant." C.R.S.10-3-1115(1)(a).an insured under an insurance policy."

22.12.  Under C.R.S. §10-3-1115 and Colorado case law, the party with standing needs neitherA litigant need not have a contractual relationship with the insurance company nor an assignment of claimsor be the assignee of an insured's claim in order to bring a statutory bad faith claim as a "first-party claimant."

23.13.  Accordingly, claims for statutory bad faith may be brought by an insured's contractor.

## JURISDICTION AND VENUE

24.14.  This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"),. 28 U.S.C. §.1332(d),) because: (i) at least one member of the class is a citizen of a state different from Defendant,Allstate; (ii) the amount in controversy exceeds $5,000,000,

exclusive of costs and interests~,~ and (iii) none of the exceptions under that section applies to this action.

25.    With regard to citizenship, as set forth below, RTP is a citizen of Colorado typically sees over 150,000 homeowner hail loss claims every year.

26. 15.  and Travelers benefits from a 6.5% market share of residential insurance policies and 6.2% market share of commercial insurance policies in Coloradois not.

27.    As for amount in controversy, statistics from the National Insurance Crime Bureau show that between 2017 and 2019, approximately 126,700 Colorado insureds per year filed hail claims and 62% of those claims were homeowners' claims. If Travelers insures 6.89% of the homes for which claims are filed, that means that in a given year, Travelers handles approximately 5,400 homeowners' hail claims in Colorado. An average residential roof size in Colorado is approximately 2,100 square feet (or 21 100-square foot "squares").

28. 16.  Travelers includes in its estimates a"), and the labor rate Travelers pays for removaltear-off of roofing material that is approximately (and in some cases more than) $75 per square less than the skilled roofing labor rate that is paid for installation. Even if only one-fourth of the estimated 5,400 roofs required replacement, Plaintiff and the class may recover more than $8,500,000 in damages, excluding attorneys' fees and costs, based on Travelers' failure to pay roofing labor for tear-off of roofing material in a two-year class period.

29.    Assuming even just a quarter of the over 250,000 residential roofs require complete replacement when they sustain hail damage, and not including a single commercial property covered by Travelers (which are treated the same way as residential property claims), Plaintiff and the class may recover damages of over $12 million based on Traveler's failure to

pay for roofing material removal labor in a two-year class period for residential properties alone. Based on information available, Plaintiff believes that the damages are significantly higher when commercial property claims are included.

30.17.  Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here, and under 18 U.S.C. § 1965(a) because DefendantTravelers transacts business or is otherwise found in this district.

## PARTIES

31.18.  Plaintiff RTP Roofing is a Colorado corporation with a principal office street address of 4011 S Federal Boulevard, Sheridan, Colorado 80110.

32.19.  Plaintiff is a citizen of Colorado.

33.20.  Defendant The Travelers Home and Marine Insurance Company is a publicly-traded Delaware corporation with itsConnecticut entity whose principal office is located at 485 Lexington Avenue, New York, NY 10017-26301 Tower Square, Suite 2MS, Hartford, Connecticut, 06183-0001. It is not a citizen of Colorado.

21.      Defendant The Standard Fire Insurance Company is a Connecticut entity whose principal office is located at 1 Tower Square, Hartford, Connecticut 06156-0001. It is not a citizen of Colorado.

34.22.  Defendant Travelers Commercial Insurance Company is a Connecticut entity whose principal office is located at 1 Tower Square, Hartford, Connecticut 06183-0002. It is not a citizen of Colorado.

## FACTUAL ALLEGATIONS

23.      InRTP is a  roofing contractor in the Denver metro area with more than 27 years
of experience.

35.      For at least the last two10 years, PlaintiffRTP has done roofing frequently
performed work stemming from claims for hail damage on properties covered by Travelers
insurance policies.

24.      Ininsureds. It has been RTP's uniform fashion,experience that Travelers
unreasonably denied payment for refuses to pay the roofing labor rate for removaltear-off of
roofing materials and, instead paid, will only pay the much lower demolition rate.

36.      RTP has approached Travelers representatives about Travelers' failure to pay the
market rate for tear-off of roofing materials multiple times. Each time RTP has raised this issue
and explained that the roofing labor rate.

37.      Travelers uses a construction estimating software called Xactimate, the leading
estimating software for construction, and in particular roofing work.

38.      The Xactimate program contains default labor rates for specific categories of
work.

39.      In particular, when roofing material installation or replacement is selected as the
category of work, Xactimate defaults to the roofer labor rate; specifically, it auto-populates the
rate for skilled roofing labor.

40.      By contrast, when roofing material removal is selected as the category of work,
Xactimate defaults to the demolition labor rate, auto-populating the rate for general demolition
labor.

~~41.      A lower demolition rate is the default rate for roofing material removal labor even though the same workers who perform the installation also perform the removal, using the same specialized roofing skills, encountering the same dangers, and commanding the same elevated wages.~~

~~42.      Below is a screenshot of the Xactimate program's default labor rates, showing that demolition labor (DMO) is used for removal, but skilled roofing labor (RFG) is used for replacement of roofing material:~~



25.      ~~In every single roofing claim for hail damage~~ should apply, Travelers ~~unreasonably uses the default demolition rate for roofing material removal in its estimates, denying~~ has informed RTP that Travelers does not pay the roofing labor rate for this type of roofing work for anyone, under any circumstances.

26.      As a result, RTP and – on information and belief – other roofing contractors stopped including the roofing labor rate on their *own* estimates when performing work for Travelers insureds because any attempt to require Travelers to pay the roofing labor rate rather than the demolition rate during the claim process was futile.

27.      Travelers uses Xactimate, an industry-wide estimating program, to create its repair estimates. Generally speaking, a user creates an estimate in Xactimate by adding line items that represent the repair work required to be done. There are two ways a user can do this. The

user can add items by interfacing with Xactimate Sketch, a component of Xactimate that allows users to create sketches of rooms, roofs, structures, etc., that require repairs. Or, the user can manually add line items by using an "add" button that brings up a menu that allows the user to make selections until the desired item comes up.

28.     When a removal task is selected, the program automatically inserts demolition labor ("DMO"), while replacement tasks typically default to their trade labor rate ("RFG"). This is demonstrated in the screenshot below:



29.     Importantly, Xactimate allows the user to select a different labor rate.  In the screenshot above, for example, the user would click on the arrow next to DMO and have the option to select roofing labor ("RFG").

43.30.  However, each and every time Travelers adjusts a Colorado roof claim for hail damage, Travelers uses the demolition rate for removal of roofing material removal in its estimates, unreasonably denying insureds, and therefore their contractors, payment for the difference between the skilled roofing labor rate and the general demolition labor rate. There is no reasonable basis for Travelers' refusal to pay the appropriate labor rate.

44.     There is no reasonable basis for denying payment for skilled roofing labor.

31.   ~~For example, Plaintiff performed roofing work for~~ Following are three examples of claims where Travelers paid the demolition rate instead of the correct roofing labor rate for tear-off.

~~45.~~32.   RTP was the insured's contractor in connection with a hail ~~loss for a property~~claim in Castle Rock, Colorado~~.~~ with a date of loss of June 6, 2019 ~~("~~(the "Castle Rock Claim").

~~46.~~   ~~The~~ Travelers ~~provided its~~Home and Marine Insurance Company created a repair estimate ~~of covered work for the Castle Rock Claim on~~dated July 4, 2019~~.~~

~~47.~~33.   ~~Travelers's estimate contained~~, that included the following line item for ~~roofing material removal~~tear-off:

DWELLING
2. Tear off, haul and dispose of comp. shingles - *18.91*   17.92 SQ   52.18   0.00   935.07   (0.00)   935.07

~~48.~~   ~~For 17.92 SQ (or "squares"), Travelers agreed to pay a~~ The Travelers Home and Marine Insurance Company scoped $52.18/SQ for labor – the demolition rate – for a total ~~of~~ $935.07~~, with a demolition labor rate of $52.18 per square.~~

~~49.~~   ~~.~~ The ~~skilled~~ roofing labor rate for ~~removing roofing material would have been~~ tear-off in that location on July 4, 2019, was $166.81 ~~per square in Castle Rock on the date of the estimate.~~

~~50.~~34.   /SQ. Accordingly, the total payment ~~to Plaintiff~~ for ~~removal~~tear-off of 17.92 squares ~~of roofing material~~, which ~~The~~ Travelers Home and Marine Insurance Company admitted was ~~a~~ covered ~~benefit~~, should have been $2,989.24.

~~51.~~35.   Therefore, **~~Plaintiff was~~** The Travelers Home and Marine Insurance Company denied ~~a total~~benefits of **$2,054.17** for the Castle Rock Claim.

11

52.36.  Similarly, ~~Plaintiff performed roofing work for hail loss for a property~~RTP was the insured's contractor in connection with a hail claim in Parker, Colorado, with a date of loss of July 21, 2019 ~~("the "~~Parker Claim").

53.     ~~Travelers provided its~~The Standard Fire Insurance Company created a repair estimate ~~of covered work for the Parker Claim on~~dated September 4, 2019.

54.37.  ~~Travelers's estimate contained,~~ that included the following line item for ~~roofing material removal~~tear-off:

| 2. Tear off, haul and dispose of comp. shingles - | 28,73 | (27.71) SQ | 56.85 | 0.00 | 1,575.31 | (0.00) | 1,575.31 |
|---|---|---|---|---|---|---|---|

55.     ~~For 27.71 squares, Travelers agreed to pay a total $1,575.31, with a~~The Standard Fire Insurance Company scoped $56.85/SQ for labor – the demolition ~~labor~~rate – for a total of $~~56.85 per square.~~

56.     1,575.31. The ~~skilled~~ roofing labor rate for ~~removing roofing material would have been $166.81 per square~~tear-off in ~~Parker~~that location on ~~the date of the estimate.~~

57.38.  September 4, 2019, was $166.81/SQ. Accordingly, the total payment ~~to Plaintiff~~ for ~~removal~~tear-off of 27.71 squares ~~of roofing material~~, which ~~Travelers~~The Standard Fire Insurance Company admitted was ~~a~~ covered ~~benefit~~, should have been $4,622.31.

39.     For 27.71 squares, The Standard Fire Insurance Company agreed to pay a total of $1,575.31, with a demolition labor rate of $56.85 per square.

58.40.  Therefore, ~~Plaintiff was~~The Standard Fire Insurance Company denied ~~a total~~benefits of **$3,047.00** for the Parker Claim.

59. ~~Similarly, Plaintiff performed roofing work for hail loss for a property in Denver, Colorado with a date of loss of July 4, 2019 (~~"RTP was the insured's contractor in connection with a hail claim in Denver ~~Claim"").~~

~~60.~~41. ~~Travelers provided its estimate,~~ Colorado, with a date ~~of covered work for~~ loss of July 4, 2019 (the "Denver Claim ~~on July 1, 2020."").~~

~~61.~~42. ~~Travelers's estimate contained~~Travelers Commercial Insurance Company created a repair estimate dated July 1, 2020, that included the following line item for ~~roofing material removal~~tear-off:

| QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 3. Remove Laminated - comp. shingle rfg. - w/ felt | | | | | | | | |
| 14.04 SQ | 57.68 | 0.00 | 809.83 | NA | NA | NA | (0.00) | 809.83 |

~~For 14.04 squares,~~

| QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 3. Remove Laminated - comp. shingle rfg. - w/ felt | | | | | | | | |
| 14.04 SQ | 57.68 | 0.00 | 809.83 | NA | NA | NA | (0.00) | 809.83 |

~~62.~~ Travelers ~~agreed to pay a total $809.83, with a~~Commercial Insurance Company scoped $57.68/SQ for labor – the demolition ~~labor~~ rate ~~– for a total~~ of $~~57.68 per square.~~

~~63.~~ ~~809.83.~~ The ~~skilled~~ roofing labor rate for ~~removing roofing material would have been~~tear-off in that location on July 1, 2020, was $182.62 ~~per square in Denver on the date of the estimate.~~

~~64.~~43. ~~/SQ.~~ Accordingly, the total payment ~~to Plaintiff~~ for ~~removal~~tear-off of 14.04 squares ~~of roofing material~~, which Travelers Commercial Insurance Company admitted was ~~a~~ covered ~~benefit~~, should have been $2,563.98.

65.44.  Therefore, ~~Plaintiff was~~Travelers Commercial Insurance Company denied ~~a total~~benefits of **$1,754.15** for the Denver Claim.

**CLASS ACTION ALLEGATIONS**

66.45.  Plaintiff realleges and incorporates by reference all prior allegationsparagraphs of this Complaint as if fully set forth herein.

67.46.  Plaintiff seeks certification of a Class as defined below, pursuant to Fed. R. Civ. P.Federal Rule of Civil Procedure 23:

> All persons or entities who performed roofing work in Colorado pursuant tofor a Travelers insured in connection with a claim for covered roof damage covered under a Travelers insurance policy, and were denied proper payment of the roofing labor rate for removal paymentsof roofing materials by Travelers in the period of June 25, 2019, to the present.

> i. Excluded from the Class are: (i) any judge(s) presiding over this action and members of their families; (ii) Defendants's subsidiaries, parents, successors, predecessors, and any entity in which Travelers or its parents have a controlling interest and their current or former employees, officers and directors; (iii) persons who properly execute and timely request exclusion from the Class; and (iv) the legal representatives, successors or assigns of any such excluded persons.

68.47.  **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but upon information orand belief, there are hundreds of contractors who have done roofing work in Colorado pursuant tofor Travelers insurance policies.insureds and have been similarly injured by Travelers' unreasonable refusal to pay roofing labor for tear-out. Members of the Class can be identified through Travelers's records.

69.48.  —**Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members. These common questions include but are not limited to:

> i. Wwhether Travelers denied payment for skilled roofing labor for roofing material removal.;

ii. ~~W~~ whether Travelers' denial of payment for skilled roofing labor for roofing material labor was unreasonable~~.~~;

iii. whether Travelers was unjustly enriched~~.~~;

iv. whether Plaintiff is entitled to injunctive relief~~.~~;

v. whether Plaintiff and the Classes are entitled to damages~~.~~; and

vi. whether Plaintiff and the Classes are entitled to any other relief.

~~70.~~49. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Travelers'~~s~~ uniform, wrongful conduct in denying payment ~~for~~of the roofing material ~~removal~~ labor rate for tear-off of roofing materials.

~~71.~~50. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest in conflict to those of the Class and Travelers has no defenses unique to Plaintiff.

~~72.~~51. **Appropriateness**: The class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Travelers'~~s~~ wrongful conduct. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from Travelers'~~s~~ unlawful practices. Even if Class members could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase

the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

73.52.  **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Travelers has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole. Travelers's practices challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these practices hinges on Travelers's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

74.53.  Plaintiff reserves the right to revise the Class definition based on information learned through discovery.

## PLAINTIFF'S FIRST CLAIM FOR RELIEF
## VIOLATION OF C.R.S. 10-3-1115 AND 1116
### (On behalf of Plaintiff and the Class)

75.54.  Plaintiff realleges and incorporates by reference the foregoing allegationsall prior paragraphs of this Complaint as if fully set forth herein.

76.55.  At all times pertinent hereto, the following Colorado statute was in effect:

**10-3-1115. Improper denial of claims – prohibited – definitions – severability.**

77.(1)   (1) (a)      A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

(b)   "First-party claimant" means an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy.

C.R.S. § 10-3-1116 provides 1115(1)(a remedy) (b)(I).

78.56.   A first-party claimant as defined above "whose claim for such denial or delay of payments benefits has been unreasonably delayed or denied may bring an action in the form of "a district court to recover reasonable attorney fees, and court costs, and two times the covered benefit." C.R.S. § 10-3-1116(1).

79.57.   Under C.R.S. §10-3-1115 and Colorado law interpreting this statute, "on behalf of any Plaintiff is a first-party claimant" includes claims brought as defined by an insured's contractor. Section 10-3-1115(1)(b)(I).

80.   Travelers unreasonably delayed or denied payment of insurance benefits by:

(1)58.   failing to provide denying or delaying the payment of the reasonable, necessary, and actual funds to remove portions of damaged roof systems. amount it is obligated by the insurance policy to pay for tear-off of roofing materials where such Travelers acknowledges that removal of roofing materials is admittedly a covered benefit: under the policy.

(2)59.   Travelers further unreasonably delayed or denied payment of insurance benefits by engaging in additional acts and omissions that may be discovered in the course of litigation.

81.   Travelers unreasonably denied As a result, Plaintiff has been damaged and delayed payment in violation of C.R.S. §10-3-1115.

82.60.   Travelers is subject entitled to the provisions of C.R.S. §10-3-1116 for double damages recover reasonable attorneys' fees, court costs, and attorney fees. two times the covered benefit with regard to each and every claim.

**PLAINTIFF'S SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

~~83.~~61.  Plaintiff realleges and incorporates by reference ~~the foregoing allegations~~all prior paragraphs of this~~ Complaint as if fully set forth herein.

~~84.~~62.  Travelers received the benefit of the difference between the demolition labor rate it paid and the skilled roofing labor ~~and demolition labor rates~~rate it should have paid for tear-off of roofing ~~material removal labor~~materials.

~~85.~~63.  Travelers'~~s~~ benefit was at the expense of Plaintiff and the Class.

~~86.~~64.  It would be unjust for Travelers to retain that benefit.

**PLAINTIFF'S THIRD CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT~~AND INJUNCTIVE RELIEF~~**
**(On behalf of Plaintiff and the Class)**

~~87.~~65.  Plaintiff realleges and incorporates by reference ~~the foregoing allegations~~all prior paragraphs of this~~ Complaint as if fully set forth herein.

~~88.~~66.  ~~Travelers's practice of failing~~Travelers' refusal to pay ~~for skilled~~the roofing labor rate for tear-off of roofing material ~~removal, and instead paying the lower~~rather than the demolition labor rate~~,~~ is an unreasonable denial of a covered benefit and is a violation of C.R.S. §§ 10-3-1115 and -1116~~, as discussed above.~~.

~~89.~~67.  Plaintiff seeks a declaratory judgment that Travelers'~~s~~ practice of denying payment to contractors for skilled roofing labor is a violation of ~~Colorado state law,~~C.R.S. §§ 10-3-1115 and -1116.

~~90.~~68.  Plaintiff seeks a permanent injunction enjoining Travelers from continuing to engage in the unlawful practice.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for relief against Travelers as follows:

~~Certifying~~

~~a.~~1.~~Certification of~~ this case as a class action, designating Plaintiff as Class Representative and his attorneys as Class Counsel;

~~Double damages~~

~~b.~~2.~~Reasonable attorneys' fees~~, court costs, and ~~reasonable attorney fees incurred in prosecuting this action~~two times the covered benefit with regard to each and every claim pursuant to C.R.S. § 10-3-1116;

~~An award of pre~~

~~c.~~3.~~Pre~~- and post-judgment interest;

~~d.~~4.Costs and expenses;

~~e.~~5.A ~~declaratory judgment~~declaration that Travelers'~~s~~ failure to pay is unlawful;

~~f.~~6. Equitable and injunctive relief to Plaintiff and the Class, including a permanent injunction, restitution, disgorgement, and an accounting of all revenue gained by Travelers through its unlawful conduct; and

~~g.~~7.Such other and further relief as th~~is~~e Court may deem just, equitable or proper.

**A JURY IS DEMANDED AS TO ALL ISSUES HEREIN.**

Respectfully submitted ~~June 23~~November 12, 2021.

s/ Richard D. Daly
***Richard D. Daly***
Daly & Black, P.C.
John Scott Black
Melissa Waden Wray
2211 Norfolk St~~reet~~., Suite 800
Houston, ~~TX~~Texas 77098
Tel~~ephone~~: ~~(~~713~~)~~.~~-~~.655-.1405
~~Email: rdaly@dalyblack.com~~
      ~~jblack@dalyblack.com~~
Email: rdaly@dalyblack.com
      jblack@dalyblack.com
      mwray@dalyblack.com
      ecfs@dalyblack.com (service)

and

/s/ William C. Gray
**William C. Gray**
Gray LLC
Nathalie E. Sar
17 N. State St., Suite 1600
Chicago, ~~IL~~ Illinois 60602
Tel: 312.967.3653
~~Email: bgray@grayllclaw.com~~
~~nsar@grayllclaw.com~~
Email: bgray@grayllclaw.com
nsar@grayllclaw.com

*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I certify that on November 12, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel:

Wystan M. Ackerman
ROBINSON & COLE LLP
280 Trumbull St.
Hartford, Connecticut 06103
wackerman@rc.com
Tel: 860.275.8388
Fax: 860.275.8299
Matthew Scott Ponzi
Foran Glennon Palandeck Ponzi & Rudloff PC - Chicago
222 North La Salle St., Suite 1400
Chicago, Illinois 60601-1059
mponzi@fgppr.com
Tel: 312.863.5000
Fax: 312.863.5099

Steven Carl Swanson
Foran Glennon Palandeck Ponzi & Rudloff PC – Denver
700 17th St.
Denver, Colorado 80202
sswanson@fgppr.com
Tel: 720.336.2245
Fax: 312.863.5099

s/ Richard D. Daly
*Richard D. Daly*